UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| In re: | ) | |
| --- | --- | --- |
| | ) | Bankr. No. 08-42854 |
| JAMES THOMAS, et al., | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |

---

| NORTH AMERICAN SPECIALITY | ) | |
| --- | --- | --- |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 4:09-CV-248 (CEJ) |
| | ) | |
| JAMES THOMAS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of plaintiff North American Specialty Insurance Company ("NAS") for summary judgment. Defendants James Thomas and Dorothy Thomas filed no opposition, and the time allowed for doing so has expired.

I. **Background**[1]

J. Thomas & Company, Inc. ("JTC") was a close corporation organized under the laws of Missouri, engaged in the construction business as a general contractor.[2] (Doc. #12, at 1). The defendants controlled JTC's monetary transactions, "including receipts of funds from project owners as well as disbursement of funds to subcontractors, vendors and other creditors on construction jobs[.]" (Doc. #12, at 1). NAS is an

---

[1]Pursuant to Local Rule 4.01(E), "[a]ll matters set forth in the statement [of facts] of the movant shall be deemed admitted for the purposes of summary judgment unless specifically controverted by the opposing party." E.D. Mo. L.R. 4.01(E). Because the Thomases failed to comply with Local Rule 4.01(E), the Court deems NAS's Statement of Uncontroverted Material Facts as admitted.

[2]"Per Missouri Secretary of State Records, [JTC] was administratively dissolved on or about August 27, 2008." (Doc. #12, at 1 n.1).

insurance company that issues security bonds on construction contracts. (Doc. #1, at 2, para. 10).

On February 12, 2003, prior to issuing construction performance and payment bonds to JTC, as principal, NAS entered into a General Indemnity Agreement (the Agreement) with JTC and the defendants. (Doc. #13-2). Each defendant signed the Agreement as an individual indemnitor, and defendant James Thomas also signed the Agreement on behalf of JTC. Id. at 3-4. The Agreement identifies "Surety" as NAS, "Washington International Insurance Company, . . . North American Capacity Insurance Company, and/or any and all existing and/or future affiliates subsidiaries, divisions, successors, assigns, co-sureties, and/or reinsurers of said entities[.]" Id. at 1.

Pursuant to the Agreement, the parties agreed, *inter alia,* that:

2. The Indemnitors will exonerate, hold harmless, and indemnify the Surety from and against any and all liability, loss, costs, damages, fees of attorneys and consultants, and other expenses, including interest, which the Surety may sustain or incur by reason of, or in consequence of, the execution of such bonds and any renewal, continuation or successor thereof, including but not limited to, sums paid or liabilities incurred in settlement of, and expenses paid or incurred in connection with claims, suits, or judgments under such bonds, expenses paid or incurred in enforcing the terms hereof, in procuring or attempting to procure a release from liability, or in recovering or attempting to recover losses or expenses paid or incurred, as aforesaid.

3. If the Surety receives any claim or lawsuit asserting liability, or sets up a reserve to cover any liability, claim asserted, suit or judgment under any such bond, the Indemnitors will, immediately upon demand, and whether or not the Surety shall have made any payment therefor, deposit with the Surety a sum of money equal to such claim or reserve and any increase thereof as collateral security on such bond, and such sum and any other money or property which shall have been or shall hereafter be pledged as collateral security on any such bond, shall be available, in the discretion of the Surety, as collateral security on all bonds coming within the scope of this instrument, or for any other indebtedness of the Indemnitors to the Surety; and any such collateral security

> shall be held subject to the terms of the Surety's regular form for collateral, which is by reference made a part hereof. . . .
>
> 7. If any of the bonds are executed in connection with a contract which by its terms or by law prohibits assignment of contract proceeds, or any part thereof, <u>the Indemnitors covenant and agree that all payments received for or on account of said contract shall be held as a trust fund</u> in which the Surety has an interest, for the payment of obligations incurred in the performance of the contract and for labor, materials, and services furnished in the prosecution of the work provided in said contract or any authorized extension or modification thereof; and, further, <u>it is expressly understood and declared that all monies due or to become due under any contract or contracts covered by the bonds are trust funds</u>, whether in possession of the Indemnitors or otherwise, for the benefit of and for the payment of all such obligations in connection with any such contract or contracts for which the Surety would be liable under any of said bonds, which said trust also inures to the benefit of the Surety for any liability or loss it may have or sustain under any of said bonds, and <u>this Agreement and declaration shall also constitute notice of such trust</u>.
>
> 8. <u>The Surety shall have the exclusive right to decide and determine whether any claim, liability, suit or judgment made or brought against the Surety or the Indemnitors, or any one of them, on any such bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and the Surety's decision thereon, if made in good faith, shall be final and binding upon the Indemnitors</u>. The Surety shall have no obligation to tender its defense to any Indemnitor. If the Surety elects not to tender its defense to any Indemnitor, the Indemnitors shall nevertheless remain liable to the Surety for any and all loss, costs, damages, interest, and expenses, including but not limited to attorneys' fees and consultants' fees resulting from the Surety's investigation and/or defense. An itemized statement of payments made by the Surety for any of the purposes specified herein, sworn to by an officer of the Surety, or the voucher or vouchers for such payments, <u>shall be *prima facie* evidence of the liability of the Indemnitors to reimburse the Surety for such payments, with interest</u>.

(Doc. #13-2, at 1-2) (emphasis added). NAS then issued contract, wage, and welfare bonds on behalf of JTC. (Doc. #1, at 2-4).

On April 23, 2008, the Thomases jointly filed a Chapter 7 voluntary petition in the United States Bankruptcy Court for the Eastern District of Missouri. *In re* James

Thomas, et al., Bankr. No. 08-42854 (Bankr. Doc. #1). The Thomases listed NAS as one of their unsecured creditors, and noted that the amount of NAS's claim was unknown. (Bankr. Doc. #1, at 35).

On July 22, 2008, NAS brought an adversary action for determination of nondischargeability of a debt owed by defendants. (Doc. #1). NAS alleges "that the monies that it has been forced to pay as a secondary obligor to bond claimants on [JTC]'s account constitutes a non-dischargeable [sic] debt under 11 U.S.C. § 523(a)(4) in that it arises from the Thomases' flagrant failure to pay over bonded [sic] contract funds received by them . . . in clear violation of the express trust duties imposed on the Thomases by the [Agreement]." (Doc. #12, at 2-3).

On July 23, 2008, the Bankruptcy Court discharged the Thomases' debts, and explained that "[m]ost, but not all, . . . of [the Thomases'] debts [were] discharged if the debt existed on the date the bankruptcy case was filed." (Bankr. Doc. #63, at 2). The Bankruptcy Court then transferred the adversarial proceedings to this Court on February 13, 2009.

On October 9, 2009, NAS served its first requests for admissions on the Thomases; however, NAS received no response. See (Doc. #13-3; #13-4). Then, on November 18, 2009, NAS filed the instant motion for summary judgment, alleging that "the monies that [it] paid . . . on JTC[]'s bonds constitute a debt owed by the Thomases, [the debt arose] from defalcation of the [Thomases,] and that such debt is non-dischargeable in bankruptcy under 11 U.S.C. § 523(a)(4)." (Doc. #11, at 2). Additionally, NAS contends that its attorneys' fees, consultants' costs, and the interest on the paid claims are also nondischargeable under § 523(a)(4).

## II. Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Fed.R.Civ.P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986).

## III. Discussion

NAS first asks the Court to declare that its payments on the claims against JTC's bonds are nondischargeable debts under the Bankruptcy Code. Secondly, NAS claims that the interest on JTC's paid bond claims as well as its fees for attorneys and

consultants are also nondischargeable debts. The Court will address each issue in turn.

### A. *The Thomases' Indebtedness to NAS for Bond Payments*

"With certain enumerated exceptions, '[t]he effect of a discharge in bankruptcy is to release a bankrupt [individual] from all his provable debts.'" In re Lewis, 97 F.3d 1182, 1185 (8th Cir. 1996) (citing Davis v. Aetna Acceptance Co., 293 U.S. 328, 331 (1934) (internal quotations omitted)). The Bankruptcy Code, however, provides that "[a] discharge . . . does not discharge an individual debtor for any debt . . . for fraud or defalcation while acting in a fiduciary capacity[.]" 11 U.S.C. § 523(a)(4). As stated above, the Bankruptcy Court discharged the Thomases' debts. NAS argues that, pursuant to § 523(a)(4), the Thomases, as fiduciaries, incurred a nondischargeable debt as a result of their failure to hold the project funds in trust to pay subcontractors and vendors on JTC's construction contracts.

"Whether a relationship is a 'fiduciary' one within the meaning of section 523(a) is a question of federal law." In re Cochrane, 124 F.3d. 978, 984 (8th Cir. 1997) (citing Lewis v. Scott, 97 F.3d 1182, 1185 (8th Cir. 1996)). The Eighth Circuit "interpret[s] the term 'fiduciary' in § 523(a)(4) to refer only to trustees of 'express trusts.'" Hunter v. Philpott, 373 F.3d 873, 875-76 (8th Cir. 2004) (citations omitted).

Upon careful review, the Court believes that NAS has presented sufficient evidence to establish that the Agreement imposed a fiduciary duty on the Thomases as indemnitors. Pursuant to paragraph 7 of the Agreement, the Thomases agreed "that all payments received for or on account of . . . contract[s] <u>shall be held as a trust fund</u> . . . and, further, it is expressly understood and declared that all monies due or to become due under any contract or contracts covered by the bonds <u>are trust funds</u>[.]" (Doc. #13-2, at 1) (emphasis added). In fact, the defendants also agreed

that "[the] Agreement . . . shall . . . constitute notice of such trust." (Doc. #13-2, at 2, para. 8). As such, the Agreement clearly created an express trust, which obligated the Thomases to hold the money that they received from the construction project managers in trust to pay for labor and materials. The Court, therefore, finds that the Thomases were fiduciaries under the Agreement.

The next issue is whether the defendants committed defalcation in the course of their fiduciary capacity. "Defalcation is not defined in the bankruptcy code." Philpott, 373 F.3d at 875 n.1 (citations omitted). However, the Eighth Circuit interprets defalcation to mean "misappropriation of trust funds or money held in any fiduciary capacity[, or the] failure to properly account for such funds." In re Cochrane, 124 F.3d 978, 984 (8th Cir. 1997) (quoting Lewis, 97 F.3d at 1186). "Under § 523(a)(4), defalcation 'includes the innocent default of a fiduciary who fails to account fully for money received.' . . . An individual may be liable for defalcation without having the intent to defraud." Cochrane, 124 F.3d at 984 (citation omitted).

Here, it is undisputed that JTC entered into numerous construction contracts, which were secured by payment, performance, wage, and welfare bonds issued by NAS. (Doc. #12, at 7; #13, at 2, para. 2, 4; #13-5). Although the defendants received payments from the construction project owners to pay for the labor performed and the materials provided, they failed to use such funds to pay these expenses. (Doc. #13, at 2, para. 4). In fact, NAS has received numerous claims on eight of the twenty-six bonds issued on JTC's construction projects as a result of JTC's failure to pay such expenses. (Doc. #13, at 2, para. 5; #13-5). "Neither JTC[] nor the [Thomases] contested the claims or gave NAS[] reason to believe the claims [were] invalid, and nothing in NAS[]'s own investigation indicated [that] the claims were [in]valid." (Doc. #12, at 2). Furthermore, NAS "has . . . made demand[s] on

the [Thomases] to meet their indemnity obligations under the [Agreement], but to no avail." (Doc. #12, at 2). Thus, NAS has paid claims on JTC's contracts in the amount of $454,938.61. (Doc. #13-5). The record also indicates that NAS has received additional claims totaling $336,866.56. (Doc. #13-5). Based on the foregoing, the Court finds that the Thomases, as fiduciaries under the Agreement, misappropriated the funds that they received on behalf of JTC by failing to (1) pay the creditors of JTC's bonded contracts; and (2) indemnify NAS for the claims that it paid on JTC's behalf.

Therefore, the Court concludes that there is no genuine issue as to whether the Thomases committed defalcation. As such, the Court finds that the Thomases' indebtedness to NAS for the paid claims in the amount of $454,938.61 and the pending claims in the amount of $336,866.56 are nondischargeable debts under § 523(a)(4).

B.   *Attorneys' Fees, Consultants' Costs, and Interest*

NAS also asks the Court to declare that its fees for attorneys and consultants and the interest on the paid claims are nondischargeable debts. The Eighth Circuit holds that attorneys' fees and interest provided by a contract become part of a nondischargeable debt. In re Alport, 144 F.3d 1163, 1168 (8th Cir. 1998); see also In re Hunter, 771 F.2d 1126, 1131 (8th Cir. 1985).

Here, NAS claims that it is entitled to $155,886.99 in attorneys' fees and $145,262.62 in consultants' fees in connection with the Thomases' failure to pay the claim on JTC's bonded contracts. (Doc. #13, at 2, at para. 5). NAS also seeks to recover $43,247.47 for the interest on the paid claims. (Doc. #13-5). Pursuant to paragraph 2 of the Agreement, the Thomases agreed to indemnify NAS for "any and all liability, loss, costs, damages, fees of attorneys and consultants, and other expenses, including interest, which [NAS] may sustain or incur by reason of, or in consequence of, the execution of [the] bonds" on JTC's construction contracts. (Doc.

#13-2, at 1) (emphasis added).  Because the Agreement explicitly provides that the Thomases would reimburse NAS for attorneys' fees, consultants' costs, and interest on paid claims, the Court finds that NAS is entitled to recover such fees.  As such, the Court concludes that there is no genuine issue that the Thomases' nondischargeable debt owed to NAS includes NAS's attorneys' fees, consultants' costs, and the interest on the paid claims.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff North American Speciality Insurance Company's motion for summary judgment [Doc. 11] is **granted**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 24th day of February, 2010.